Good morning, your honors. May it please the court. My name is Braddock J. Huseman, and on behalf of Fisher Huseman, I represent the appellants in this matter, former Commonwealth Attorney General Matthew Gregory, who just argued in front of this court, former Acting Attorney General Gregory Baca, former Assistant Attorney General Anthony Welch, and Assistant Attorney General Tom Schwager. I would like to reserve five minutes of my time, if I may, for rebuttal. This is a collateral order appeal from the district court's denial of a motion to dismiss based on qualified and absolute immunity. Specifically, Mr. Fennell has brought claims under 42 U.S.C. 1983, claiming violations of his First, Fifth, and Fourteenth Amendment rights. Specifically, Mr. Fennell claims that his right to a conflict-free counsel was abridged, and that he was retaliated for the exercise of his First Amendment rights. Before I get to these constitutional claims, I would like to discuss an overarching problem with the district court's opinion. And that is the district court's use, or incorrect use, of the standard on a motion to dismiss. As this court knows, the new standard for pleadings in the First, Pardon me. The new standard for sufficiency of pleadings is found in Ashcroft v. Iqbal, not Gibson v. Connolly. And we believe that colored the court's decision all the way throughout the order. Now, turning to the individual constitutional claims, as far as the due process claim goes, and his right to a conflict-free counsel, basically, Mr. Fennell is alleging that attorneys within the Office of the Attorney General, who were not his attorneys, who had no attorney-client relationship with him, injured him. And they injured him by taking actions against his interest. There's no claim here, Your Honors. An individual who is entitled to a government attorney has the right to have that individual attorney not take interests adverse to his actions. Mr. Fennell had an attorney, it was David Lockerbie. There are no allegations in the complaint that Mr. Lockerbie took any actions adverse to Mr. Fennell's interests. I think we saw Mr. Lockerbie earlier this week. And you saw Mr. Lockerbie yesterday. He is currently the civil chief of the Office of the Attorney General. It's a small honor. And it's all here today, actually. You have a bar convention right here in Honolulu. As I said, Mr. Fennell, or any individual, is entitled to an attorney who doesn't take an adverse position to his. What Mr. Fennell is not entitled to, and what he is claiming, is that the entire Office of the Attorney General, and every attorney general in that office, must refrain from taking a position adverse to his. And there is no right in the Commonwealth to have that happen. And the reason we say there's no right to that is the Commonwealth Constitution requires the attorney general to represent all Commonwealth defendants. The American Bar Association model rules, which are applicable in the Commonwealth, specifically exempt public attorney's offices from the same kind of conflicts that a private. You didn't argue absolute immunity for their participation in the lawsuit, right? Disqualified. No, this is part of the qualified immunity. And this is the first prong of the qualified immunity test, where we don't believe there is a protected right. The absolute immunity, to clarify, only goes to a very small subsection here. I believe Mr. Fennell has brought claims against just the made allegations against former Attorney General Gregory, and former acting Attorney General Baca, that they failed to certify him as an employee. And we provided Second Circuit opinion to this court, indicating that when an attorney general refuses or does not certify a person as an employee, that that is, they are entitled to absolute immunity for that decision. And that is, it's a very, very narrow request for absolute immunity in this case. Most of this is all qualified immunity, Your Honor. Who represents the lands authority? The land authority is a government agency that is represented initially by Mr. Gregory, when he was a private attorney, and now by the Office of the Attorney General, when it was reorganized into the Department of Public Lands. And that is the entity that was represented by Mr. Baca, and Mr. Welch, and Mr. Schweiger. So it appears that our case law says that absolute immunity only applies where the conduct at issue is intimately associated with the judicial phase of litigation. So the Second Circuit case notwithstanding, why would absolute immunity apply if the request for certification was basically an administrative function and not associated with the judicial? Respectfully, I would disagree that it was just an administrative function. When the Attorney General of the Commonwealth is the protector of the purse, he makes sure that there was a request that Mr. Fennell be indemnified for his acts as a receiver for a private bank, that he was somehow an employee of the Commonwealth. And I think we've pointed this out to the court. We don't quibble with the idea that Mr. Fennell is entitled to immunity for good faith acts he took as a receiver. Any receiver has immunity from the court for acting on behalf of the court. There is a question, however, whether a receiver who isn't paid by the Commonwealth, who is a receiver for a private bank, is in fact an employee of the Commonwealth. Absolutely. And so that's an administrative decision. That has nothing to do with the judicial proceedings. It's a determination as to whether or not administratively this person is to be recognized as an employee. So how do you get absolute immunity for that? Well, we're relying on the, I don't think there's any contrary opinion in the Ninth Circuit. And we're relying on a sister circuit. I think the difference in that case was they predicated it on actually being part of a court proceeding, which puts you in a different position than Mr. Rawlinson was mentioning, the administrative. But you still would have your claim that there would be qualified immunity on the same basis of no constitutional right? Exactly, Your Honor, yes. Can I ask you a question to jump ahead? But on the First Amendment claims, if, in fact, he was retaliated against and that is alleged in connection with comments and statements he made, why wouldn't that state a First Amendment claim? Well, as I understand this claim, the reason we don't think it states a claim is because the same acts that gave rise to the First Amendment claim are the same acts that gave rise to the due process claim. And those are these individuals took actions against Mr. Fennell's interests. And as far as the First Amendment goes, they took actions against his interest in retaliation for his exercise of free speech. Well, the actions that they took against his interests are the prosecution of a lawsuit. And that lawsuit, under the Norr Pennington doctrine, that lawsuit must be a sham lawsuit for his First Amendment claim to go forward. The government agency is entitled as a First Amendment right to take its grievances to court. And that is what it has done. There is a current lawsuit pending in NMI Superior Court. That lawsuit is, you know, it's clear that that lawsuit is the genesis of this lawsuit. If you look at the record, the request for relief Mr. Fennell is asking for, he's asking for the Office of the Attorney General to refrain. He's asking for an injunction against the Office of the Attorney General from representing the government agency in that lawsuit. And he's also asking to be reimbursed for insurance funds that he has expended, or that his insurance company has expended for, in defense of that lawsuit in NMI Superior Court. And so the only way he can maintain a lawsuit under the Norr Pennington doctrine is if that case against him in Superior Court is a sham. It's four years running. That lawsuit has not been dismissed. It's still, I believe, at the motion to dismiss phase. And so even if it were to be dismissed tomorrow under Norr Pennington, that doesn't necessarily mean that that lawsuit was a sham. It means it was dismissed. He has to show it was a sham. And we would submit, as a matter of law, that if it's an ongoing lawsuit, it can't be a sham lawsuit. Well, do the Iqbal complaints also apply to the First Amendment claims here, that they're not specific? I believe they do, Your Honor, yes. I believe they do. And let me be clear about this. I don't believe there's sufficient facts under either the Gibson or the Iqbal standard. But the Iqbal standard is a raised standard. And I think it highlights the fact that these pleadings are deficient. Do we get to that point on the interlocutory appeal? In this case, we get to the point only in the fact that this is an interlocutory appeal based on qualified immunity. In this case, he has to have pled sufficient facts to state a claim to get past the first prong of the Saucere test, which I realize the court can take in any section it wants now under Pearson. But the first step of the Saucere test is that he has to allege a violation of rights. And as far as Iqbal goes, there's not a violation of rights here. As I've stated, there is no right to have the Office of the Attorney General take an adverse possession or adverse position. There is no right to have the Office of the Attorney General framed from taking adverse position states. And the First Amendment claim is barred by the North Huntington Doctrine. Right. But when we're looking at qualified immunity, we take the facts alleged as true. And then looking at those facts, whether or not it states a constitutional claim. Sure, Your Honor. And we're not saying that you shouldn't take the facts as true. But the facts are that, again, attorneys in the Office of the Attorney General who were not Mr. Fennell's clients and who he did not have an attorney-client relationship with took adverse positions to his. Those are the facts at play. And we don't believe that states a claim. And if there's no other questions, I'll reserve my remainder of my time. All right. All right. Good morning, Your Honor. Mark Hanson for Randy Fennell, who's a plaintiff below in the appleee today. And just to clarify, Mr. Fennell's claims in this case aren't just that the attorney general defendants took adverse positions to his in litigation. It's much more than that. The complaint details a lot of what we claim is subversive conduct of the attorney general is to undermine his defense in the litigation. It's not just the prosecution, the continued prosecution, the maintenance by the attorney general's office of that portion of the litigation against Mr. Fennell. At the same time, they were representing Mr. Fennell. It's all the other actions that they did also, which was pled in the complaint. And with regard to the Twombly-Iqbal pleading standard, I don't believe it's inelaborately appealable at this point. To the extent that it relates to qualified immunity, I think that the district court is aware of the standard. It's applied it in other cases before this. That Connolly language may have just been a carryover. But the court went through in its decision and highlighted a lot of the factual tensions of the allegation. And this court's going to do an overview of the complaint. And we'll see that the allegations of the complaint are heightened and do support a finding that there should not be qualified immunity in this case. I did want to. Well, before we pass over that, there is we do look at the allegations of the complaint, which we used to do under Gibson. And then we did it under Bell Atlantic. And now we do it under Twombly-Iqbal. But we do look at that because it's intertwined so tightly with an appeal on qualified immunity.  Because qualified immunity, of course, you have to see if there's a potential claim, constitutional claim. So it's inevitably intertwined, isn't it, so that we have to look at that as well? Absolutely, Your Honor. And I believe the court will do that. And it's most recently done that, I think, in the Al-Kid case, where it was reviewing qualified immunity and looking at the allegations of the complaint. My argument is that the government has argued that the failure of the court to mention Twombly in the decision taints the entire decision. And I don't believe that's the case. And I think this court can look at it, as it will, and look at the allegations of the complaint. So we just look at them, take them at face value, and taking them as true, whether or not that states a constitutional claim. That's flawed. Don't really parse the complaint as we would normally do in terms of trying to decide whether or not a motion to dismiss is appropriate. And it's not just probable, but plausible. And that's the new Twombly-Iqbal scandal. With regard to Norton. Would you tell us what is the First Amendment claim? And where can we tell from the complaint which of these defendants did what they weren't supposed to do in violation of the First Amendment? The First Amendment claim is that the maintenance of the two parts, one, the maintenance of the lawsuit was to stifle Mr. Fennell's continued speech, undermine his ability to defend himself in a lawsuit with access to the courts, which would necessarily infringe on his First Amendment claim and his access to the courts, but also to retaliate against him for raising a lot of issues that had to do with the bank management at the time. So you know qualified immunity is an individual offense. So where in the complaint was each individual, were the actions of each individual cataloged so that we can determine for each individual whether or not qualified immunity lies? I don't. We alleged a conspiracy between the four of them, and we did not, in the complaint, break out the individual actions of each of the attorneys general, which is very hard for us to tell at this stage of the litigation. Well, let's take the First Amendment claim. Basically, you said that the maintenance of the lawsuit stifles speech, and each one of them is maintaining this lawsuit? Each one of them is participating in the litigation of the lawsuit. And you have to remember in the lawsuit. Where does it say that? It's in the complaint. In paragraph 59 of the complaint, which for example, we allege that Defendant Baca, as Gregory's deputy attorney and the lead attorney for the Commonwealth government in the MPLA's participation in the lawsuit against Mr. Fennell, and then he was then the acting attorney general, knowingly and intentionally participated in and furthered and continues to participate in and for the defendant's conspiracy to obstruct justice and to deny Mr. Fennell's constitutional rights. OK, is that where we should look for the guts of the First Amendment claim, then? And I think the guts of the First Amendment claim have to be pulled from the breadth of the allegations, from how it started to the fact that the chairman of the bank's board is now the governor. And the attorneys for his interests that he represented in the bank was Mr. Fennell, or I mean, Mr. Gregory, who is now, or was then, made the attorney general. And then they abolished that agency. And so they basically brought it all in-house. And that house was already representing Mr. Fennell in the same lawsuit. So is the lawsuit both the maintenance of the lawsuit, the retaliation, and the basis for the First Amendment claim, then? I think the First Amendment claim is two-part. It's one, the maintenance of it, and that it was used, that it was maintained in retaliation for prior. So it's basically to stifle currency. So anyway, it centers around the lawsuit, both of those allegations. They do center around the maintenance of the lawsuit and the undermining of Mr. Fennell's defense in the lawsuit. And to say that we don't think that the government's characterizing the right to conflict-free representation properly. It continues to use conflict-free counsel and says that the only thing that Mr. Fennell was entitled to, or is entitled to, is an assistant attorney general to help him in the lawsuit. You look at the other side of it, and they have at least four attorneys prosecuting the case against Mr. Fennell in the same office. And in the CNMI, we're talking about an office that has maybe 20 attorneys general, half of which work in the criminal division. And we're talking about civil litigation. So it's a very tight group of people. And it's hard to say that the boss, who was the one that initiated the lawsuit in the first place, the attorney general, wouldn't divert resources somewhere else that could be used to defend Mr. Fennell in the case, which was his right. He was granted government counsel, government representation. And in that, it has to be independent, conflict-free representation. In all of the cases, the state court cases cited by the government basically state that. They say, in these jurisdictions, the office of the attorney general in those jurisdictions can represent conflicting interests. But they have to ensure independent, conflict-free representation. And it's not fair to say that the Constitution requires the attorney general in the Commonwealth to represent the government in all cases. There's an exception for it, one of them being today. The counsel for the government today is not an assistant attorney general. It's a private counsel. It happens all the time in the Commonwealth when there are conflicts. When this case was first taken in by the office of attorney general, the reason why Mr. Fennell was denied payment of outside independent counsel was because the office had made a decision that it did not have a conflict at that time. That was the prior administration, the prior attorney general. Then the governor came in, who was basically a big subject of the Bank of Saipan litigation, and brought with him one of the attorneys that had filed a lawsuit, a separate complaint in that litigation. Has there been a bar complaint in this matter? I don't believe there has been a bar complaint in this matter, yet. But that basically then created this conflict. And they're saying now that there's a lot of discussions about screening, and there's a lot of fact-based arguments that have been raised. And some of them, for the first time on appeal, they're not appropriate for review. There's issues that they're not now arguing a waiver, and some allusions to some abstention. None of that is appropriate for this court's review on appeal. I'll get to Nora Pennington in a minute. But there was no provision of independent conflict-free representation from that office. And to say that, well, Mr. Lockerbie was all he needed, all he wanted, is fairly massive litigation. It's just not appropriate to say that that guaranteed that there was no conflict within the office, that Mr. Lockerbie was provided the staffing and the resources. I mean, it's a slippery slope to say, well, the attorney general controls the office and the purse strings and said, OK, well, we don't like you, and I filed this case against you, and we're going to continue to maintain this case against you. But we'll give you this guy over here, and internally say, don't give him any staffing. Don't give him any money. Don't give him any help. And basically tell him if he works on that case that he's not going to get any vacation, any promotion, so that he doesn't work on the case. And in effect, that's what's happened. I mean, this case has been stalled for many years. And the attorney general's office has basically allowed it to stall. Then after that, there was a new law passed that changed the government indemnity for government employees around. And Mr. Fennell submitted to the attorney general, Mr. Gregory, a request to certify that, again, he's already been certified that he was an employee of the government when he was acting as a statutory receiver, bank receivers in this commonwealth are statutory. It's not a private corporation receiver. He was a statutory receiver. The determination was already made once. And then he asked them to make that determination again. Because then what happens is the government actually has to substitute in under the statute as the defendant in the case. And that office absolutely refused for two years to take any action on his continued request to recertify him as a government employee that had already been done once. So now what's happened on that? They finally declined to do it, saying that they had a conflict of interest and sent it to the court to have the court make the decision. Where if they had said that two years ago, we could have taken it out to the court and then got the court to do it. So is that part of this lawsuit? That's part of the underpinnings of this lawsuit. In the allegations and the complaint, we do allege that. Is there a claim based on that? The claim in this case is a deprivation of civil rights under 1983. I understand. But are you saying that the delay in ruling on the certification is a violation of some right? That combined with all the other actions taken by the attorney general defendants in this case deprived Mr. Fennell of his due process right to conflict-free representation, which was the substantive predicates for which are the indemnification statutes of the Commonwealth and the model rules of professional conduct, and also that it violated his right of access to the courts and his right to free speech, stifled his free speech, and was used in retaliation for his free speech. But the specific allegations. You were going to get to North Pennington, and you are running out of time. OK. Just that's very brief. Excerpt 44, there are allegations with regard to delaying over two years of decision decline to make such a determination that Mr. Fennell could request the Superior Court make a determination that was with regard to his recertification as employee, which would have caused the government to substitute in, and that, in effect, would have been a suing itself. With North Pennington, it should not be a part of this case. First of all, it was not raised in the court below. No, not a single North Pennington case was even cited in the case below. The first time that the government and status conferences, the government refused to take a position that had been taken by the attempted intervener, that we were only using this case to try to stop the other case. Well, the other case has basically been somewhat dead in its tracks, which was noted by the court below. But North Pennington's not an immunity that is immediately appealable. It's not qualified immunity. It's not absolute immunity. It's not immediately appealable. It's very fact-based. But it wasn't raised. And if it were, the court would have mentioned it in the appeal, in its decision. But cannot raise it for the first time on appeal, and it's not a collateral order appeal. It's just not provided for. This court hasn't ruled expressly on that, but it has ruled in other cases that, and I believe one of them is, I'm almost out of time. One of them was Armendariz, which was an unmarked decision. I believe Judge Hawkins was on that panel, 75 after 1311. And also, I think, in Al Kidd, the chief judge warned against extending collateral order doctrine to cover various other types of immunities and not extending that. And lastly, with regard to the absolute immunity, we still have a conflict issue, even with regard to that small portion of Matt Gregory being the attorney general at the time, doing the certification. I don't believe that it is administrative. Even the Supreme Court case that sided, the Thornton case that was sided by the defendants in their reply brief, the whole entire case is about the distinction between administrative functions and prosecutorial functions, or judicial functions. And the government defendants here basically put in a parenthesis that said, or administrative, which made it seem like that Supreme Court in that case was saying that it's the same, judicial and administrative are the same, and they're both entitled to absolute immunity, which is not the case. They were making the distinction between saying, administrative, and that's, I'm sorry, I think that's Buckley, but administrative functions are not entitled to absolute immunity. Thank you. Thank you. I just want to cover a couple of things, maybe address something, some questions the court had. It's unclear to my clients what the actual problem and the complaint is, as far as the First Amendment goes. If the court draws its attention to the excerpt's record, 43 through 44, those are the allegations against my client. The allegations are that they took actions against his interests, that they failed to represent him, that they represented a government agency against him. Those are the allegations Mr. Fennell has pled against my clients. Now, in the brief, in his answering brief, Mr. Fennell has now alleged that the Office of the Attorney General put four attorney generals on the government's case, and only Mr. Lockerbie against him. If he wants to allege those claims in a pleading, well, I would submit that that might very well state a case. Or if my clients took confidential information and used it against him, that might very well state a case. But that's not what he pled. That's not what he pled at all. What he pled was that attorneys who weren't his attorney, who he did not have a relationship with, took adverse positions to his. And quite simply, that doesn't state a claim. And as far as Norr Pennington goes, your honors, we didn't raise, and I admit this in my reply brief, we did not raise the doctrine by name. But we, at oral argument and in the papers below, told the court that, look, this lawsuit is an attempt to shut down the NMI Superior Court lawsuit. It's an attempt to go around it. And you're running the risk, if you rule in this case, there's a chance that Mr. Fennell could win this case and lose his Superior Court case. See, the problem is that we're here on interlocutory appeal, and the district court didn't dismiss that claim on that ground, correct? That's true. It did not. I mean, it could, or it might. It might not. But the only reason it's here is we believe that, under Norr Pennington, to state a claim, that has to be a sham lawsuit. And if it's pending currently in the NMI Superior Court, You would need to claim a sham lawsuit, at least, without details, but you'd have to say it was a sham. Yes. And if it's going on right now, it can't be a sham. So if there's no other questions, I'll thank you. Thank you. Thank all counsel for your argument this morning. Fennell versus Gregory is submitted and worded.
judges: Hawkins, McKeown, Rawlinson